O’CONNELL, Justice.
Claimant petitions for a writ of certiorari to an order of the Florida Industrial Commission and the respondent cross-petitions to the same order.
Thomas L. Greene, the claimant, suffered a compensable injury to his right foot and ankle in August 19S5. He was furnished medical care and compensation and ultimately returned to work. Thereafter he suffered various periods of disability due to the injury and was furnished medical care and compensation by the employer-carrier, sometimes voluntarily but on other occasions only after a claim was filed, hearing had and an order entered requiring it.
In October 1957 a deputy entered an order on a stipulation awarding claimant a disability rating of 35% loss of use of his right foot, which order was complied with by the carrier. Claimant had further difficulty with his foot in 1958 which resulted in *285 another order increasing the rating of loss of use of the foot to 40%.
In 1959 claimant suffered further problems with his foot and a deputy entered an order requiring medical care and temporary disability benefits, which were furnished until November 2, 1959.
Almost continuously from November 2, 1959 until June 3, 1960 claimant was an involuntary guest of the City of Tampa at the city stockade due to various convictions for vagrancy and public intoxication.
While so incarcerated he suffered swelling and pain in his right foot and ankle and on three occasions was taken to a hospital for treatment of his complaints. On the last examination tests were made which indicated the possibility of tuberculosis. He was confined in the Tampa General Hospital from June 3 to June 23, 1960 and then transferred to the Southwest Florida Tuberculosis Hospital where he remained until April 3, 1961.
On February 21, 1961 claimant filed a claim for medical benefits and temporary total compensation from June 3, 1960 until such time as he should reach maximum medical recovery.
At the hearing claimant stipulated that he had made no request upon the employer for medical benefits between the dates of November 2, 1959 and February 21, 1961 when he filed his claim and that therefore the medical care received from June 3, 1960 to February 21, 1961 was unauthorized and the employer-carrier not responsible to reimburse claimant therefor under Sec. 440.-13, F.S.A.
Following this hearing the deputy entered an order dated June 13, 1961. In this order the deputy stated that claimant had abandoned his claim for reimbursement and/or payment of medical care for the reason explained in the preceding paragraph.
The deputy delineated the issues before him to be whether claimant: (1) was entitled to additional medical care, (2) was suffering from a disability to the right foot in excess of the 40% permanent partial disability previously awarded, and (3) was entitled to an award of attorney’s fees and costs.
The deputy decided that the claimant was not entitled to have additional medical care furnished by the employer-carrier, although he found claimant to need such; if the claimant had more than a 40% loss of use of the foot, it was not due to the accident; and that claimant was not entitled to reimbursement for or payment of the medical expenses rendered him. The deputy awarded no attorney’s fees or costs.
In his order the deputy made it clear that he found no additional medical benefits and no increase in percentage of loss of use of the foot to be warranted because of the claimant’s misconduct or failure to properly utilize the care available to him. He said:
“ * * * I do not feel that the claimant has by the evidence substantiated a finding of permanent partial disability of more than 40% of the right foot. If in this aspect I am wrong, and I must admit that there apparently is an immediate need for additional medical treatment for the right foot, the file reflects a bizarre disregard on the part of the claimant toward the medical treatments and facilities that were made available to him.”
Then, after reciting a lengthy record of convictions and sentences imposed on claimant by the City of Tampa, beginning in September 1959 and continuing to May 27, 1960, the deputy said:
“Medical reports are replete with statements on the part of the various physicians of failure to keep appointments, keeping of appointments while under the influence of alcoholic beverages and claimant’s failure to abide by and follow the instructions of the *286 physicians provided. This evidence can result in no finding other than a finding to the effect that any disability, if it may exist, above and beyond a 40% permanent partial loss of the use of the right foot is not causally related to the accident nor the subsequent medical treatment provided but is caused solely by the Claimant’s failure to properly utilize the medical facilities that were supplied him, his addiction to alcoholic beverages and the times spent by him in jail.”
On review the full commission affirmed that part of the deputy’s order denying reimbursement and/or payment for medical care prior to entry of the order of June 13, 1961 but reversed that portion of the deputy’s order denying such benefits in the future, saying that the opinion of the deputy that such care was required only because of the misconduct of the claimant was:
“ * * * not supported by competent substantial evidence as it appears from the record that all of the medical testimony causally relates claimant’s condition to the original accident and none of the medical witnesses would testify or could say that claimant’s failure to cooperate had prevented his recovery. Therefore, it appears to us that this particular finding should be reversed.”
The commission in its order stated that the cause should be remanded to the deputy with instructions to order the respondents to furnish further remedial treatment and stated the deputy should determine whether claimant was entitled to either temporary total or partial disability “during such time he is receiving remedial treatment.”
After so stating, the commission then expressly ordered:
“ * * * that that portion of the deputy’s order denying future remedial treatment subsequent to April 3, 1961, be and the same is hereby vacated and set aside and said cause be and the same is hereby remanded to the deputy commissioner with instructions to order the employer and carrier to furnish such further remedial treatment to the claimant as the nature of the injury or process of recovery may require; and to determine whether claimant is entitled to compensation either for temporary total disability or temporary partial disability *
We shall first consider respondents’ cross-petition for writ of certiorari.
Respondents in their cross-petition take the position there was in the record competent substantial evidence which accorded with reason and logic to sustain the finding of the deputy the need for further remedial care was not related to the industrial accident.
We cannot agree with this contention.
It appears that the deputy made his finding in reliance primarily upon the mere fact claimant had been guilty of the misconduct already mentioned. We find no medical evidence or testimony of such character as to warrant a finding based thereon that the misconduct was solely responsible for the need for further remedial care.
We reject as without merit respondents’ argument that their position is that the misconduct had no effect upon the disease attacking claimant’s foot and ankle but did necessitate further medical treatment in order to get good results.
Respondents’ complete argument rests upon the testimony of the two attending physicians purportedly to the effect the misconduct influenced claimant’s condition.
One of the attending physicians, upon being asked, said it was “possible” claimant’s failure to continue orthopedic care offered by the respondents contributed to the progression of his condition. This witness elaborated by saying in relation to claim *287 ant’s misconduct that “it didn’t help his over-all troubles not to continue with proper medical care; but I don’t think that if he had * * * that his worries were over.”
He stated he could not answer the question whether had the claimant been more cooperative the further hospitalizations would have been necessary.
The other attending' physician testifying, Dr. Johnson, stated claimant’s lack of cooperation consisted primarily of not keeping appointments; not having his leg and foot cast repaired until it was in “miserable” condition; and not wearing a brace when he was instructed to do so. Fie stated:
“ * * * I think all those things contributed in a sense to his not obtaining a satisfactory result, but just how much I really don’t know, to be perfectly frank with you.” (Emphasis added.)
To the question whether he could testify with reasonable medical certainty that claimant’s failure to cooperate did slow up the healing process or accelerate or aggravate the disease from which claimant was suffering, this witness replied:
“No, I don’t think so.”
Dr. Johnson elaborated that it was his opinion that even had claimant been kept in the hospital under complete control for a full three year period the disease progress would not have been obliterated. He said he did not know how much claimant’s behavior contributed to his poor result. He repeated:
“I think it had some small part. How much I don’t know.”
Under the doctrine of Crawford v. Benrus Market, Fla.1949, 40 So.2d 889, respondents, in order to defeat the award, had the burden of showing that another cause of the claimant’s condition was more logical and consonant with reason, for we think it is manifest that claimant had succeeded in conclusively showing a serious injury and proving a logical cause (the com-pensable accident) for it. Respondents attempted to meet this burden by showing that claimant’s misconduct was more logically the cause of his condition. They were not successful in this attempt, for we find the medical evidence upon which they rely in support thereof too inconclusive and conjectural. At most the medical experts could be said to have established only that the misconduct aggravated the disease process. The medical testimony does not even tend to establish that the misconduct was solely responsible for the present condition.
Thus, claimant’s prima facie case stands. It will not be necessary upon remand for the deputy to then make a finding whether the need for future remedial care is causally related to the industrial accident, for claimant’s unrebutted case has already established that fact. The commission was correct in reversing the deputy on this point.
The commission has indicated that upon remand the deputy is to order the respondents to furnish such further remedial treatment “as the nature of the injury or process of recovery may require.” It is our view that such instruction does not preclude the deputy from finding that an apportionment is in order because of the aggravation element, should he find such element present. If an apportionment is in order as to remedial treatment, it follows it would be in order as to an award for compensation, should such be made.
Having reached the above conclusion, we hereby conclude the respondents’ cross-petition for certiorari must be denied.
We must now consider claimant’s petition for writ of certiorari, which presents two points for determination.
First, claimant argues the deputy erred in not awarding him compensation for temporary total disability from the time he was *288 hospitalized, June 3, 1960, and continuing thereafter until such time as he reaches maximum medical improvement.
Respondents argue this point is premature, since the commission said it would instruct the deputy upon remand “to determine whether claimant is entitled to compensation either for temporary total disability or temporary partial disability.”
While the commission in its order first indicated it may have intended for the deputy to determine whether compensation for temporary or partial disability should become due in the future during the time claimant “is receiving remedial treatment,” it then specifically ordered the deputy to merely make the determination whether claimant was “entitled to compensation either for temporary total disability or temporary partial disability.”
We construe this order of the commission to mean that the deputy is not precluded from making such determination even as to the time already elapsed from June 3, 1960. We believe this interpretation of the commission’s order is compelled by the liberality with which we treat claimants in workmen’s compensation proceedings. Hence, so construing the order of the commission, the petition is premature as to this point.
Claimant’s second point is that the deputy should have given him an award for reimbursement for medical expenses incurred by him from February 21, 1961 (the date of notice of his current claim) to April 3, 1961 (the date he was discharged from the tuberculosis hospital). He in effect contends that on February 21, 1961 he was in need of hospitalization and made demand therefor, in the form of his claim, which demand was denied by the respondents. He argues that under such circumstances he was authorized to incur necessary and proper medical expenses, which he did, and to be reimbursed therefor by the respondents.
In their brief, respondents expressed the opinion that upon remand the deputy should consider this point and make a finding thereon, since he made no reference thereto in his order, merely ruling that the hospitalization expenses at Tampa General Hospital, which claimant entered on June 3, 1960, and Southwest Florida Tuberculosis Hospital, which he entered on June 23, 1960, were not requested nor authorized.
At oral argument, however, through different counsel, respondents argued those medical expenses between February 21, 1961 and April 3, 1961 were but a continuation of the unauthorized medical treatment and there should be no reimbursement made therefor to the claimant. Respondents concede they may be responsible for medical treatment and expenses subsequent to April 3, 1961.
It is unquestioned that the deputy and the commission were of the view respondents should not be responsible for the medical expenses incurred through claimant’s hospitalization in both the general and the tuberculosis hospitals. The latter hospitalization continued up to April 3, 1961. Claimant in seeking reimbursement from respondents for medical expenses incurred from February 21, 1961 to April 3, 1961 is thus seeking partial reimbursement for the hospitalization expenses which the deputy specifically disallowed. The deputy in fact stated that claimant “abandoned his claim for reimbursement” for the medical expenses incurred at the general and at the tuberculosis hospitals.
At the conclusion of the hearing counsel for claimant stipulated in effect that all bills “from October 29, 1959 to February 20, 1961” were unauthorized and the respondents were not responsible for them.
Thus, it can be seen that the deputy erred in saying claimant had abandoned his claim for reimbursement, for the tran *289 script reflects he did not abandon such for the period from February 21 to April 3, 1961, a period of a month and some ten days.
We do note it could be argued that at the time respondents were notified of claimant’s claim, that is, at the time “demand” was made upon them, from claimant’s standpoint, for medical care, respondents were unable to comply for the simple reason claimant was already under the care and treatment of a physician of his own choice who had ordered the hospitalization and had not yet released him.
However, respondents cannot take the position that they would have furnished remedial care immediately upon being notified or requested on February 21, 1961, but could not due to the fact claimant was already under the care of a doctor of his own choosing—their position was that the need for such remedial treatment was caused solely by claimant’s misconduct.
Sec. 440.13, F.S.A., provides that if the employer fails to provide medical care requested, the employee “may do so at the expense of the employer, the reasonableness and the necessity to be approved by the commission.”
Respondents argue the hospitalization was needless (claimant was hospitalized in the tuberculosis hospital under the suspicion he had tuberculosis in the bones of the foot, but later it was discovered he did not) and had they had the opportunity they may have sent him to a different doctor who probably would not have hospitalized claimant. Although this is respondents’ argument, the deputy in his order made no determination that the remedial care claimant obtained was not reasonable and necessary.
It is our opinion that in effect claimant on February 21, 1961 notified his employer he was in immediate need of remedial care; despite this notice the employer did nothing; it could have approved the care he was getting and offered to pay for it or it could have offered other remedial care, but it did neither and instead took the position the compensable accident was not causally related to the existing need for further remedial care; and in the face of this rejection claimant “sought” medical care on his own (in actuality he continued that which he had already obtained). We feel that these circumstances demanded that the deputy, under Sec. 440.13, should have determined whether such treatment was reasonable and necessary. In making this finding the deputy of course must determine whether such need for medical care was causally related to the industrial accidents; this determination, however, should actually merely be a matter of form, for, as previously noted, the claimant has already established his prima facie case on this issue.
Respondents should not be permitted to escape liability for the necessary and reasonable medical expenses subsequent to the demand therefor, in the form of the claim filed February 21, 1961, simply because claimant was already obtaining some remedial treatment, where such need was causally related to the industrial accident, which fact the respondents controverted.
While the claimant may have waived his right to reimbursement for the remedial care received from June 3, 1960 through February 20, 1961, the fact he made claim for such treatment from February 21, 1961 until the date of maximum medical recovery precludes a ruling that he waived reimbursement for the period of from February 21 to April 3, 1961.
Accordingly, we find it necessary that this cause be remanded so that the deputy may make a finding as to the necessity for and reasonableness of the remedial treatment claimant obtained from February 21 to April 3, 1961. Again, we recognize that if the deputy finds it was reasonable and nec *290 essary, he may also find that an apportionment is in order should he determine claimant’s misconduct in part caused the need for such treatment.
Accordingly, the claimant’s petition for writ of certiorari must be granted in part and denied in part. The order of the commission must be quashed insofar as it affirmed the order of the deputy pertaining to remedial treatment from February 21 to April 3, 1961. The order of the commission, as we construe it herein, pertaining to the remanding for determination of whether compensation for temporary total or temporary partial disability should be made must be undisturbed. That portion of the commission’s order reversing the deputy as to remedial treatment subsequent to April 3, 1961 must be affirmed also. The cause should be remanded to the deputy to determine whether the remedial treatment for the period from February 21, 1961 to April 3, 1961 was necessary and reasonable, thus requiring reimbursement by the respondents, and to determine whether claimant is entitled to a compensation award for temporary total or temporary partial disability, including that period of time already elapsed beginning June 3, 1960, and for any increase in loss of use of the foot and ankle. After making these determinations, the deputy of course should again consider whether the claimant is entitled to an award for attorney’s fees and costs.
The respondents’ cross-petition for writ of certiorari must be denied.
This cause is remanded to the full commission with instructions to remand it to the deputy for further proceedings consistent herewith.
It is so ordered.
ROBERTS, C. J., and TERRELL, THOMAS and THORNAL, JJ., concur.